**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3238-13T3

IN THE MATTER OF THE ADOPTION OF
A CHILD BY J.E.V. and D.G.V.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| October 23, 2015 |
| APPELLATE DIVISION |

Argued September 17, 2015 — Decided October 23, 2015

Before Judges Fuentes, Koblitz and Gilson.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FA-07-0115-14.

Alex Miriam Miller argued the cause for appellant L.A. (Donahue Hagan Klein & Weisberg, LLC, attorneys; Francis W. Donahue and Ms. Miller, on the brief).

Bonnie Frost argued the cause for respondents J.E.V. and D.G.V. (Einhorn, Harris, Ascher, Barbarito & Frost, attorneys; Matheu D. Nunn and Mark Wechsler, on the brief).

Respondent The Children's Home Society has not filed a brief.

The opinion of the court was delivered by

KOBLITZ, J.A.D.

After a two-day trial at which she represented herself, L.A. appeals from the March 4, 2014 order terminating her parental rights to her young daughter as part of a private

adoption.[1]    We  reverse  and  remand,  holding  that  L.A.  had  a
constitutional  and  statutory  right  to  court-appointed  counsel
beginning  before  trial,  when  the  private  adoption  agency  first
determined to proceed with an adoption over her objection.[2]

The Children's Home Society of New Jersey (CHS) knew from
its first interaction with L.A. that she was indigent, yet at no
time was L.A. provided legal counsel.  Nor did the court inform
L.A. that she was entitled to appointed counsel.  Although this
case began with L.A. trying to ensure the well-being of her
daughter, and the Division of Child Protection and Permanency
(the Division) was never involved, L.A. would have been accorded
more due process had her situation been brought to the attention
of the Division based on child welfare concerns.

No evidence was introduced at trial that L.A. abused or
neglected her daughter; nor that she was addicted to drugs or
alcohol, or suffered from mental illness.  To the contrary,
poverty alone seems to have given rise to L.A.'s concerns

---

[1] The adoption was stayed pending appeal of the termination of
her parental rights.

[2] L.A. sought counsel on appeal.  We referred her request to the
Public Defender's Office, which indicated it was not statutorily
permitted to represent parents appealing private adoption
matters.   After  initial  briefing,  we  ultimately  appointed
counsel to represent L.A., and asked the parties to submit
supplemental briefs on the issue of her entitlement to trial
counsel.

A-3238-13T3

regarding the care of her two-year-old special-needs daughter. Initially contemplating adoption, L.A. placed the child with CHS. After the mandated pre-adoption counseling, which statutorily requires the advisement that adoption in New Jersey entails "the permanent end of the relationship and all contact between the parent and child,"[3] L.A. decided not to surrender her parental rights. She left her daughter with CHS for short-term foster care, and continued to visit the child. L.A. signed a plan agreeing to find a job and permanent housing with the aim of continuing to parent her daughter.

L.A. lived with her sister in Pennsylvania for several months, causing her to miss visits with her daughter. She also gave birth to a baby boy while her daughter was in foster care. L.A.'s two sons continued to live with her throughout the litigation. L.A. was still receiving welfare assistance and living at a shelter at the time of trial. L.A.'s transient housing and inability to pay for her daughter's care[4] were known to the agency and the court, and plaintiffs submitted evidence

---

[3] N.J.S.A. 9:3-41(a). Pursuant to N.J.A.C. 10:121A-5.4(c)(1)(i), an adoption agency is required to document that the birth parent was provided such counseling.

[4] CHS did not seek payment from L.A. The agency paid the foster family $13 per day plus reimbursed expenses, until the case changed from foster care to an adoption case.

of such to demonstrate that L.A. had failed to fulfill her parental duties.

After an unsuccessful short-term foster placement, the child was placed with plaintiffs. The evidence adduced at trial indicates that plaintiffs provided the child with a loving family, which included another girl of the same age. Plaintiffs also provided access to helpful professional resources to address the child's special needs.

Approximately one year after assuming custody, CHS wrote to L.A. in a March 1, 2013 letter[5]:

> The Children's Home Society is a licensed adoption agency in the State of New Jersey. You placed your daughter . . . in the care of [CHS] on March 8, 2012. Since that time, you have been inconsistent with visitation, you have not maintained consistent contact with your counselor . . . and you have made no viable plan to parent your daughter. As such, we are going to make an adoption plan for your child.
> . . . .
>
> You have the right to be represented by an attorney, and you may or may not have the right to have counsel appointed to represent you. You may contact the Essex/Newark Legal Service [sic] . . . .

---

[5] The agency also attached to the letter forms for the surrender of parental rights. This letter was not introduced as evidence at trial. Because both parties included it in their appendix, and it is useful to our understanding of the history of this matter, we have considered it.

CHS then executed an "agency consent to early filing of adoption complaint" on July 8, 2013, pursuant to N.J.S.A. 9:3-47(a), stating that the agency "believe[d]" that L.A. had "abandoned the child" and "was not fit to parent the child."  If L.A. had been involved with the Division, and if it appeared that the child was in need of services, the Division would have initiated judicial proceedings under Title 30 before the initial placement of the child outside the home,[6] and within a year would have had to satisfy a judge that adoption was the appropriate plan.[7]

At the suggestion of CHS, plaintiffs filed the adoption complaint on July 18, 2013, attaching the agency consent.  L.A.

_____

[6] See N.J. Dep't of Children & Families, Removal of a Child, in Child Protection & Permanency Manual (2011), http://www.state.nj.us/dcf/policy_manuals/CPP-II-C-2-700.pdf (stating that the Division "may seek and/or accept a parent's consent" for placement without judicial approval only in situations where the placement sought is in congregate care or an independent living arrangement, and only if the child has not been subject to abuse or neglect); see also N.J. Div. of Youth & Family Servs. v. T.S., 426 N.J. Super. 54, 64-66 (App. Div. 2012) (intervention by the Division is proper "to protect a child who, although not abused or neglected, is in need of services to ensure its health and safety").  Pursuant to N.J.S.A. 30:4C-12, after appropriate investigation by the Division, it could apply for an order granting care and custody of the child to the Division.

[7] See N.J.S.A. 30:4C-61.2(a)(2) ("A permanency hearing shall be held that provides review and approval by the court of the placement plan . . . no later than 12 months after the child has been in placement.").

objected to the adoption at every opportunity.  At the initial
pre-trial conference in October 2013, more than seven months
after the letter from CHS announcing the plan for adoption, the
court asked L.A.: "Do you intend to get an attorney at all in
this matter?"  She responded: "Working on it."  The court
informed L.A. that she should obtain a lawyer "quickly" to
comply with the discovery schedule.[8]  At no time was she advised
that a lawyer would be assigned to represent her if she could
not afford to retain counsel.

L.A.'s situation is different from private adoption
situations in other reported decisions.  L.A.'s circumstances do
not present a stepparent adoption, see N.J.S.A. 9:3-48(a)(4); In
re Adoption of Children by G.P.B., 311 N.J. Super. 38, 40 (App.
Div. 1998), rev'd 161 N.J. 396 (1999); see also In re Adoption
of a Child by J.R.D., 246 N.J. Super. 619, 625 (Ch. Div. 1990)
("The substantial number of stepparent adoptions is no longer
considered a surprising or an unusual phenomenon."); nor is this
an objection to adoption of a newborn registered by a
noncustodial parent after the custodial parent's surrender of

---

[8] This interchange can hardly be viewed, as urged by plaintiffs,
as a waiver of her right to appointed counsel.  See N.J. Div. of
Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 266 (App.
Div. 2002) (describing waiver as the intentional relinquishment
of a known right).

parental rights.[9]  See N.J.S.A. 9:3-47(c); In re Adoption of a Child by P.F.R., 308 N.J. Super. 250, 252 (App. Div. 1998).  Nor is this a situation where a custodial parent or parents have left their child with a family member or friend for an extended period of time.  See In re Adoption of a Child by J.D.S., 353 N.J. Super. 378, 385 (App. Div. 2002), certifs. denied, 175 N.J. 432 (2003).[10]  L.A. left her special-needs child in foster care with a State-licensed agency.  That agency placed the child with a foster family[11] who was unknown to L.A.  The agency then decided on its own that L.A. was an unfit mother and had abandoned her child, and encouraged the foster family to file an adoption complaint over the objection of L.A.

The termination of parental rights by State action is of constitutional magnitude, and parents unquestionably have the right to counsel when the State moves to terminate parental rights.  See N.J.S.A. 30:4C-15.4(a); N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 305-06 (2007).  CHS acted here in a fashion similar to the Division, but without providing the

---

[9] The identity of the child's father is unknown.

[10] We note that the objecting parent in the published cases were represented by counsel.

[11] The foster mother testified that her family received the same training as Division-certified resource families.  See N.J.S.A. 30:4C-27.5.

services to promote reunification or the legal safeguards afforded parents involved in litigation with the Division.

The financially advantaged foster family retained a psychologist who conducted separate bonding evaluations[12] of the child with L.A. and with the foster parents, and conducted psychological testing of only the biological mother.[13] The expert determined that the foster parents had become the child's psychological parents. He opined that separating the child from her foster family would cause great harm, a greater harm than severing the child's relationship with her biological mother.[14] The expert made no evaluation of the child with her older brother, although L.A. testified the two children had a close

---

[12] See In re Guardianship of J.C., 129 N.J. 1, 19-21 (1992) (discussing the function of comparative bonding evaluations in "assessing the existence, nature, and extent of the harm facing the child" if he or she were separated from the foster parents, but noting the "grave pitfalls" of overreliance on bonding theory in that it is often used "to keep children in foster care rather than return them to their parents").

[13] He did not diagnose the mother with a mental illness, but indicated certain conditions should be ruled out by further investigation.

[14] Notably, our Supreme Court has expressed concern with instances "where the Division removed a child from his or her biological parents and placed the child with a foster family, thereby causing a child-foster parent bond to form, and then later attempted to rely on that bond as a basis for terminating the rights of the natural parents." N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 209 n.14 (2010); see In re Guardianship of K.L.F., 129 N.J. 32, 45-46 (1992).

A-3238-13T3

relationship. Unlike the way a case involving the Division would proceed, the first time the court was involved with this family was after plaintiffs filed the adoption complaint.

The adoption statute states in pertinent part:

> This act shall be liberally construed to the end that the best interests of children be promoted and that the safety of children be of paramount concern. Due regard shall be given to the rights of all persons affected by an adoption.
>
> [N.J.S.A. 9:3-37.]

When such an irreversible, critical decision is to be made by the court in a situation such as this, an indigent person needs a lawyer. Because the preservation of families is a "paramount concern" of the State, N.J.S.A. 30:4C-1, and the termination of parental rights is of constitutional dimensions, B.R., supra, 192 N.J. at 305, indigent parents facing the termination of their parental rights by private agency action in this type of situation are entitled to appointed counsel. Our Supreme Court has held that indigent parents in private adoption matters are entitled to free transcripts, provided by the plaintiffs, or if plaintiffs are financially unable to provide the transcript, then by the Office of the Public Defender (OPD). In re Adoption of a Child by J.D.S., 176 N.J. 154, 158-59 (2003). Our Supreme Court opined:

> In a termination action based on Title 9 findings of abuse or neglect, the OPD is responsible for representation and, even when a public interest law firm undertakes that representation, for the ancillary expenses necessary to that representation. We see no basis for distinguishing OPD's responsibility in this setting where, by virtue of State legislative authorization, a private party initiated the severing of parental rights for reasons congruent to the type of findings required in a Title 9 termination action.
>
> [Id. at 158 (citation omitted).]

Our Supreme Court has determined that "the right to appointed counsel for indigent litigants has received more expansive protection under our state law than federal law." Pasqua v. Council, 186 N.J. 127, 147 n.5 (2006).[15] In Pasqua, the Court determined that indigent persons facing a civil child support enforcement hearing that could result in coercive incarceration were entitled to appointed counsel. Id. at 149. Indigent persons in quasi-criminal matters facing a potential "consequence of magnitude," including loss of driving privileges or even fines, are entitled to appointed counsel. Rodriguez v. Rosenblatt, 58 N.J. 281, 295 (1971), superseded by statute, Public Defender Act, N.J.S.A. 2A:158A-5.2, as recognized in W. World, Inc., supra, 440 N.J. Super. at 195; see R. 7:3-2(b);

---

[15] See State v. W. World, Inc., 440 N.J. Super. 175, 187-88 (App. Div. 2015) (discussing situations where indigent persons have been held entitled to appointed counsel).

10                                                          A-3238-13T3

State v. Hermanns, 278 N.J. Super. 19, 29 (App. Div. 1994) (holding "aggregate monetary sanctions of $1,800 in a single proceeding gives rise to the right to counsel under Rodriquez"). Even indigent corporations are entitled to appointed counsel when facing a consequence of magnitude. W. World, Inc., supra, 440 N.J. Super. at 201-02. After the elimination of the death penalty,[16] we can think of no legal consequence of greater magnitude than the termination of parental rights. Such termination "sever[s] the parent-child bond, . . . is irretrievably destructive of the most fundamental family relationship," and "the risk of error . . . is considerable." M.L.B. v. S.L.J., 519 U.S. 102, 121, 117 S. Ct. 555, 566, 136 L. Ed. 2d 473, 491 (1996) (internal citations and quotation marks omitted). "[A] natural parent's desire for and right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right." Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599, 610 (1982) (internal citation and quotation marks omitted).

L.A., when facing a consequence of such magnitude, imposed by the action of a State-licensed agency, was entitled to appointed counsel. Foster parents are statutorily precluded

---

[16] See N.J.S.A. 2C:11-3b.

from providing legal counsel to a birth mother past the first forty days after the filing of the adoption complaint. See N.J.S.A. 9:3-53. The OPD has not been statutorily authorized to represent indigent parents in private adoptions.[17] Private counsel must therefore be assigned.

The assigned lawyer should be present before the trial begins, when the private agency first decides to move toward adoption, to assist the parent in preparing for trial and in negotiating the process leading up to the filing of a complaint. In an action involving the Division, a lawyer is appointed through the OPD to represent the parent either when litigation begins, or certainly no later than when termination of parental rights is first sought by the State. N.J.S.A. 30:4C-15.4(a); B.R., supra, 192 N.J. at 305-06. L.A. should have been represented by counsel beginning in March 2013, when CHS first advised her she was facing the termination of her parental rights through adoption. With counsel, she would have been far better prepared for trial when it began in late October. She could have obtained her own expert, sought an attorney to represent the minor child, and sought immediate enhanced parenting time.

---

[17] The OPD's statutory authority to represent parents in termination cases derives from N.J.S.A. 30:4C-15.4(c), which concerns actions filed by the Division.

We note that had L.A. asked for her daughter to be returned, we are aware of no legal authority that would have allowed CHS to maintain custody of the child. The agency would have had to return the child to L.A., or call the Division to conduct an emergent evaluation of whether the child would be at risk if returned to L.A. If the Division had determined that the child would be at risk if returned, the Division could have sought custody through the court. See N.J.S.A. 30:4C-11; see also 9:6-8.18, -8.22.

A lawyer representing the biological parent would be of assistance to the court as well as the parent. Although we reverse and remand for a new trial, and thus need not discuss any trial errors, to emphasize the need for counsel in this complex matter, and ensure that the mistakes made are not repeated, we point out several areas where the trial court appears to have erred.[18]

The court did not explicitly make its findings by the standard of clear and convincing evidence.[19] The Supreme Court

---

[18] Except as noted, these issues were not briefed by the parties. Although we initially ordered the foster parents to provide L.A. with a transcript based on her indigency, pursuant to J.D.S., supra, 176 N.J. at 158-59, we did not appoint counsel to represent L.A. on appeal until we sought supplemental briefing on the issue of her right to counsel.

[19] The definition of clear and convincing evidence is:

(continued)

of the United States has held that "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Santosky, supra, 455 U.S. at 747-48, 102 S. Ct. at 1391-92, 71 L. Ed. 2d at 603. Our Supreme Court has held that "[a]s part of the Title 9 scheme, termination of parental rights under N.J.S.A. 9:3-46 is a component of the State's overall and coordinated system of child protection and supervision." J.D.S., supra, 176 N.J. at 158. Thus, while termination in a private adoption is not sought by a State agency, the clear and convincing standard should still govern the burden that plaintiffs bear in order to terminate a birth parent's parental rights. See J.D.S., supra, 353 N.J. Super. at 391-92, 96; see also In re Adoption of a Child by P.S., 315 N.J. Super. 91, 111 (App. Div. 1998); In re Adoption of Child by O., 307 N.J. Super.

_____

(continued)

> [T]hat which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the precise facts in issue.
>
> [I.S., supra, 202 N.J. at 168 (citation omitted).]

176, 184 (Ch. Div. 1997) ("In order to terminate a parent's rights, clear and convincing evidence of the statutory criteria must be demonstrated."). At oral argument, plaintiff's counsel conceded that this high standard is required for the termination of parental rights, while arguing that the court might have used such a standard while not articulating it. An enhanced standard of proof cannot be inferred if not expressly stated by the court. See In re Civil Commitment of E.D., 183 N.J. 536, 552 (2005).

The trial court was also somewhat unclear in delineating what standard it was using when determining what was "in the best interest of the child." The issue of whether the trial court used the correct criteria was anticipated and briefed by the foster parents in their response to the mother's initial pro se appellate brief.

Contrary to the argument set forth by the attorney representing the foster parents before the trial court, L.A. did not place her daughter for adoption as that term is used in the statute. Although it was her initial intention to relinquish her child for adoption, she did not sign a surrender of parental rights after attending adoption counseling. Thus, she did not knowingly or intelligently complete a placement for adoption. She ultimately did agree to leave her child with CHS for

15

temporary foster care; with a written plan calling for L.A. to work toward goals with the aim of parenting her child.  Thus, the standard applicable when a child has been "placed for adoption" is not appropriate here.

The inapplicable "placed for adoption" standard requires that the court find:

> during the six-month period prior to the placement of the child for adoption
>
>> (1)   that   the   parent   has substantially failed to perform the regular and expected parental functions of care and support of the child, although able to do so, or
>>
>> (2) that the parent is unable to perform the regular and expected parental functions of care and support of the child and that the parent's inability to perform those functions is unlikely to change in the immediate future.
>
> [N.J.S.A. 9:3-46(a)(1), (2).]

The statute defines the regular and expected functions of care and support of a child as:

>> (a)   the maintenance of a relationship with the child such that the child perceives the person as his parent;
>>
>> (b)   communicating with the child or person having legal custody of the child and parenting time rights, or unless prevented from so doing by the custodial parent or other custodian of the child or a social

16

service agency over the birth parent's objection; or

(c) providing financial support for the child unless prevented from doing so by the custodial parent or other custodian of the child or a social service agency.

[N.J.S.A. 9:3-46(a).]

The trial court's determination should have been guided by the standard applicable when a parent has not placed the child for adoption, the "best interest of the child" standard, which is statutorily defined as "whether a parent has affirmatively assumed the duties of a parent." Ibid. In making this determination,

[T]he court shall consider, but is not limited to consideration of, the fulfillment of financial obligations for the birth and care of the child, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

[Ibid.]

"A parent seeking to show that he or she has 'affirmatively assume[d] the duties of being a parent' need only 'demonstrat[e] . . . the establishment and maintenance of a place of importance in the child's life.'" In re Adoption of Children by G.P.B., 161 N.J. 396, 410 (1999) (alterations in original) (quoting N.J.S.A. 9:3-46(a)). Our Supreme Court explained that, under

17                                                    A-3238-13T3

this "best interest" analysis, "'demonstration of a continued interest in the child [and] a genuine effort to maintain communication with the child' . . . is not as difficult as a demonstration . . . that the person has actually communicated with the child or person having custody, as required in the performance of 'regular and expected parental duties'" under the inapplicable "placed for adoption" standard.  Id. at 410-11 (alterations in original) (quoting N.J.S.A. 9:3-46(a)).  The Court also noted that the two standards differ in measuring a birth parent's performance, insomuch as, in a best interest determination, there is no consideration of the birth parent's ability to perform, which is considered in the inapplicable "regular and expected parental functions" test used when the child has been "placed for adoption."  Id. at 411.  Lastly, under a best interest analysis, there is no time limit to the assessment, and proper consideration should be given to the birth parent's actions over the course of the child's entire life, as opposed to the six-month period expressly noted in the "regular and expected parental functions" inquiry not applicable here.  Id. at 411, 413.

Although the trial court indicated it was considering the best interest of the child in making its determination, and clearly did not focus only on the prior six months of the

18                                                    A-3238-13T3

child's life, the court appeared to be comparing the efforts L.A. made to parent the child with those made by plaintiffs. The policy in our State is not to remove children from less capable parents for the purpose of placing them with more capable parents, those with more economic resources, nor those who are better educated. See G.P.B., supra, 161 N.J. at 404; J.D.S., supra, 353 N.J. Super. at 394. The polestar inquiry "is not whether the child would be better off with the adoptive parent, but whether the biological parent has failed to fulfill his or her duties." G.P.B., supra, 161 N.J. at 413; see P.S., supra, 315 N.J. Super. at 110 ("[T]ermination based upon the child's 'best interest' . . . does not mean that termination is appropriate just because the child 'might be better off' with the foster or prospective adoptive parents."). Thus, along with not articulating the proper standard of proof, we have serious concerns as to whether the trial court used the proper legal test in determining the outcome of the trial.

No consideration was given to the appointment of a law guardian to represent the child, as is done by statute in every case involving the Division. See N.J.S.A. 30:4C-15.4(b). We recognize that lawyers are rarely appointed to represent children in private adoptions. See In re Adoption of Child by E.T., 302 N.J. Super. 533, 539-41 (App. Div.), certif. denied,

152 <u>N.J.</u> 12 (1997).  We emphasize, however, that while this matter may have taken the route of a private adoption, from L.A.'s perspective, in many ways it followed a parallel course to a Division case.  The central differences were that the court was not involved until the very end, few social services other than the opportunity to visit her child and meet with a "birth parent counselor" were offered to the mother,[20] and neither she nor her child had any legal representation as the situation evolved.

Applying these principles prospectively, we hold that, once a private adoption agency determines that it is going to seek adoption over the objection of a parent, that parent has the right to counsel.  In the future, a State-licensed private

---

[20] For example, plaintiffs presented evidence that L.A. did not seek as many visits as she might have and was late to many scheduled visits, in part because she had to take public transportation.  The Division frequently provides bus passes to parents.  L.A. was also criticized for not having permanent housing, yet no evidence was adduced that CHS assisted her in locating housing.  In July 2012, L.A. signed a "service plan" with CHS in which all four goals, including finding housing and a job, were categorized as the full responsibility of L.A.  In that plan, it was noted that L.A. "has stated that parenting is her goal."  Had the Division sought to terminate parental rights, it would have had to prove by clear and convincing evidence that it had made reasonable efforts to reunify the family, or the termination would not have been granted. <u>N.J.S.A.</u> 30:4C-15.1(a)(3); <u>see</u> <u>I.S.</u>, <u>supra</u>, 202 <u>N.J.</u> at 180 (reversing the termination of the father's parental rights in part because the Division failed to make reasonable efforts to reunify).

adoption agency must advise the court at the same time that it notifies an indigent parent that it plans to proceed with adoption. The court will then be able to appoint counsel.

The assignment of counsel to an individual who does not yet have a matter before the court presents an unusual administrative challenge. We refer this matter to the Acting Administrative Director of the Court, who may wish to consult with the Conference of Presiding Family Judges to develop a procedure. The Madden list[21] may have to be utilized to provide counsel. The child may also be entitled to counsel in these situations. E.T., supra, 302 N.J. Super. at 539-41. We do not address a non-custodial parent's entitlement to counsel when objecting to adoption after the custodial parent's surrender of parental rights, or objecting to a stepparent adoption, or objecting after the child is left with a relative or friend. We do not address these situations as they are not before us.

Because the trial court made credibility findings when L.A. was not represented by counsel, in an excess of caution, we remand to a different judge for trial. We do not intend to imply a particular result after trial for these families and this child, nor do we intend to preclude the possibility of a negotiated compromise in this particular situation. As our

---

[21] See Madden v. Delran, 126 N.J. 591 (1992).

Supreme Court has eloquently stated, "[t]he possibility of serious psychological harm to [a] child . . . transcends all other considerations." Sorentino v. Family & Children's Soc'y, 72 N.J. 127, 132 (1976).

Reversed and remanded for a new trial at which L.A. must be appointed an attorney and consideration given to appointing counsel to represent the child. See R. 5:8A. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION