# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3407-16T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

E.T.

    Defendant-Appellant,

and

T.C.

    Defendant.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF A.J.V.T.-C., J.R.T.-C., and E.M.T.-C.,

    Minors.

_____

        Submitted September 26, 2018 – Decided October 26, 2018

        Before Judges Fuentes, Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FG-15-0056-16.

Joseph E. Krakora, Public Defender, attorney for appellant E.T. (Gilbert G. Miller, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Amy M. Young, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors J.R.T.-C. and E.M.T.-C. (Margo E.K. Hirsch, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor A.J.V.T.-C. (Meredith A. Pollock, Deputy Public Defender, of counsel; Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant, E.T. (Eliza)[1] is the biological mother of three children – twelve-year-old A.J.V.T.-C. (Anthony), nine-year-old J.R.T.-C. (Jenny), and seven-year-old E.M.T.-C. (Emily). Defendant appeals from an order entered by the Family Part in this guardianship case that terminated her parental rights to

---

[1] We use pseudonyms to refer to the parties and their family members to protect their privacy and preserve the confidentiality of these proceedings. R. 1:38-3(e). We use fictitious first names to refer to adults to avoid confusion. No disrespect is intended.

2                                                                          A-3407-16T2

her children.  The children's biological father, T.C. (Ted) did not attend the three-day trial conducted by the Family Part.  He has not appealed from the final judgment of the court.  Eliza and her family have an extensive history of involvement with the Division of Child Protection and Permanency (Division) that dates back to Anthony's birth in 2006.  The Division has filed four guardianship actions and executed two emergency removals of the children, all related to Eliza's chronic and untreated drug addiction.  She has consistently failed to comply with services offered by the Division over a period of several years.

Judge Madelin F. Einbinder presided over the guardianship trial.  The Division presented the testimony of four caseworkers who described their interactions with defendant, Ted, and the children.  Psychologist Dr. David Brandwein testified as an expert witness for the Division.  He performed a psychological evaluation of defendant on April 26, 2016.  Dr. Brandwein found defendant had very limited insight and extremely poor judgment.  She "views psychological problems as a sign of weakness" and consequently refuses to recognize how her dysfunctional conduct is symptomatic of her mental health problems.

A-3407-16T2

Dr. Brandwein diagnosed defendant with a "[p]ersonality [d]isorder with [a]ntisocial and [n]arcissistic [f]eatures," and an unspecified opioid-related disorder. According to Dr. Brandwein, the combined effect of these mental health issues and abuse problems has rendered defendant unable to safely care for her children. Dr. Brandwein thus declined to recommend any services for Eliza. He did "not support [Eliza] as an independent caregiver for the . . . children"; he found it highly unlikely that she would be able to perform this role safely and adequately in the foreseeable future.

On October 24, 2016, Dr. Brandwein performed bonding evaluations with the children and their resource parents, whom the children referred to as "mommy" and "dad" or "daddy." Dr. Brandwein noted that the children appeared emotionally happy and well-cared for physically. He opined that "all three children are securely bonded to their resource parents and look to them as primary parental figures." Thus, "[s]hould the bond between the children and their resource parents be broken, all three children are likely to experience a grief reaction that would include sadness, anxiety, and uncertainty about their future." In his opinion, separation from the resource parents "is likely to provoke rather extreme and enduring emotional reactions that would have the potential to destabilize them emotionally and behaviorally for the long-term."

A-3407-16T2

On November 1, 2016, Dr. Brandwein performed a similar bonding evaluation with defendant and the children. Because defendant was incarcerated at the time, the evaluation took place in the Ocean County Courthouse. Dr. Brandwein characterized her interactions with the children as warm and loving. However, the children appeared to be occasionally distant and distracted.[2] He nevertheless opined that a "continued relationship with [defendant] would be to these children's detriment." He found the children "have built healthy, strong, and secure relationships with their resource parents" and recommended "immediate termination" of Eliza's parental rights so that the children could be permanently placed with their resource parents.

On November 14, 2016, psychologist Dr. Maureen Santina performed an independent bonding evaluation of defendant and the children on behalf of the Law Guardian. Dr. Santina found defendant "severely and repeatedly minimized her substance abuse problem and denied its impacts on her children." Dr. Santina particularly noted that defendant "showed no distress when discussing

---

[2] Dr. Brandwein did not comment on or acknowledge the inherent awkwardness of the setting where these interactions occurred. He also did not consider how defendant's incarceration and pending criminal charges may have exacerbated any uneasiness she may have felt at the time. We nevertheless did not find any basis to question the reliability of his professional assessment of defendant's parental fitness.

[Anthony's] traumatic brain injury."[3] Dr. Santina opined that defendant "exhibited persistent denial of responsibility for her actions and their effects, and displaces blame onto others for their consequences."

According to Dr. Santina, due to Eliza's "continued lack of recognition of her own role in her problems with stability and parenting, and her history of reckless behavior, substance addiction[4] and poor judgment, she cannot be

---

[3] In 2011, defendant was involved in a serious accident when the car she was driving collided head-on with a large truck. She was pregnant with Emily at the time; Anthony and Jenny were also in the car. Anthony suffered a traumatic brain injury, multiple facial fractures, a broken nose, a broken eye socket, and seriously injured his spinal cord. Defendant and Jenny were not seriously injured. The accident occurred in Newark. Defendant resided at the time in Manchester Township, located in Ocean County. Members of defendant's family alleged she had gone to Newark to buy drugs. They claimed Anthony's injuries were caused by a drug dealer who hit the boy with a concrete brick. They also alleged defendant deliberately caused the accident to conceal the true cause of her son's injuries. Anthony told social workers that "a mean man bashed [him] in the face" and that someone hit him in the head with a brick. The police confirmed that the area where the accident occurred was known for illicit drug trafficking.

[4] Defendant gave birth to Emily approximately one month after the car accident. Emily tested positive for opiates, displayed withdrawal symptoms, and was treated with morphine. According to the hospital staff, defendant showed signs of intoxication after birth; defendant nearly dropped Emily when she fell asleep while holding her infant daughter. The Division substantiated a case of abuse and neglect against defendant when a post-partum drug test confirmed she used illicit narcotics during the pregnancy. We note, however, that the legal soundness of the Division's decision to substantiate abuse and neglect against defendant under these circumstances is not before us in this appeal.

A-3407-16T2

considered a reliable or dependable caregiver for her children currently or in the foreseeable future." She ultimately concluded that Eliza "is not currently capable of safely and effectively parenting her children, and the prognosis is very poor that she will become a safe and effective caregiver in the foreseeable future."

Dr. Santina also conducted a bonding evaluation between Eliza and the children. She observed the children to be "excessively loud and hyperactive." Defendant made little effort to control their behavior. Dr. Santina noted that when Anthony announced his resource parents' last name as his own, defendant did not make any effort to correct or dissuade him. Dr. Santina opined that defendant's "lax and passive parenting would be likely to have a significantly negative effect on the children's emotional and behavioral functioning if they were placed in her care." She concluded that defendant "is not currently a safe and effective caregiver for her children and is not likely to become one in the foreseeable future" and that the interests of the children "would best be served by termination of [defendant]'s parental rights." In her opinion, the children "will not suffer enduring harm by the termination of their mother's parental rights."

Dr. Santina also confirmed that all three children "exhibit a strong, positive parental attachment to their resource mother" and the resource parents "will effectively buffer any sense of loss they may feel and would ameliorate any possible transient harm" which the children might experience as a result of the termination of parental rights. Defendant did not testify or call any witnesses.

In a thirty-one-page memorandum of opinion, Judge Einbinder chronicled defendant's dysfunctional involvement in the lives of these three children. Due to her chronic and unaddressed substance abuse problem, defendant has caused irreparable harm to all of her children. After carefully reviewing the evidence, Judge Einbinder correctly applied the statutory prongs in N.J.S.A. 30:4C-15.1(a) and terminated the parental rights of both parents. Defendant appeals, arguing Judge Einbinder erred by finding the Division established, by clear and convincing evidence, all four statutory prongs. The Law Guardian joins the Division in opposing defendant's appeal.

It is well-settled that parents have a fundamental constitutional right to raise their children. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014). However, this parental right is tempered by the State's commensurate responsibility to "protect children whose vulnerable lives or

8

psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012). The termination of parental rights is viewed as a "weapon of last resort." Ibid. As this court has aptly noted, "[a]fter the elimination of the death penalty, we can think of no legal consequence of greater magnitude than the termination of parental rights." In re Adoption of Child by J.E.V., 442 N.J. Super. 472, 481 (App. Div. 2015). Thus, a court may terminate parental rights "only in those circumstances in which proof of parental unfitness is clear," and with great caution and care. F.M., 211 N.J. at 447.

"The best-interests-of-the-child standard codified at N.J.S.A. 30:4C-15.1(a) 'aims to achieve the appropriate balance between parental rights and the State's parens patriae responsibility.'" R.G., 217 N.J. at 554 (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 280 (2007)). In order to terminate defendant's parental rights, the Division must prove, by clear and convincing evidence the following statutory criteria:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm.

Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a); see also N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 604-11 (1986) (reciting the four controlling factors codified in N.J.S.A. 30:4C-15.1(a)).]

These four statutory factors are not "discrete and separate" but instead, "they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999). The Division must prove each of the four factors by clear and convincing evidence. R.G., 217 N.J. at 554. That standard "is not a hollow one," N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 168 (2010), as such evidence produces "a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without

hesitancy, of the precise facts in issue." Ibid. (quoting In re Seaman, 133 N.J. 67, 74 (1993)).

The scope of review on appeals from orders terminating parental rights is limited. R.G., 217 N.J. at 552. We are bound to uphold the trial court's findings as long as they are supported by "adequate, substantial, and credible evidence." Ibid. The Family Part's decision should be reversed or altered on appeal only if the trial court's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). Likewise, the appellate court must give considerable deference to the family court judge's expertise and opportunity to have observed the witnesses firsthand and evaluate their credibility. R.G., 217 N.J. at 552-53. The Family Part "has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting M.M., 189 N.J. at 293).

Additionally, as the fact finder, while the "trial judge is 'not required to accept all or any part of [an] expert opinion,'" In re Civil Commitment of R.F., 217 N.J. 152, 156, 174 (2014) (quoting In re D.C., 146 N.J. 31, 59 (1996)), he

11

or she may "place[] decisive weight on [the] expert." Id. at 174. Even where an appellant alleges "error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom," deference must be afforded unless the judge "went so wide of the mark that a mistake must have been made." M.M., 189 N.J. at 279 (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." R.G., 217 N.J. at 552 (quoting Manalapan Realty, LP v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995)).

Against these standards of review, we discern no legal basis to disturb Judge Einbinder's factual findings or her well-reasoned application of the statutory prongs in N.J.S.A. 30:4C-15.1(a). Defendant remains unable or unwilling to address her addiction. The expert witnesses who testified, both in the Division's case in chief and on behalf of the children through the Law Guardian, stressed the need for permanency and stability in these children's lives. Judge Einbinder found the extended family members that defendant proffered as placement options were unsuitable for this task. We also discern no legal basis to disturb Judge Einbinder's decision to deny the maternal grandparents' three motions to intervene in this case. Grandparents do not have

12

a right to intervene absent a showing of psychological parentage which was not alleged here. <u>Watkins v. Nelson</u>, 163 N.J. 235, 254 (2000).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3407-16T2