# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0360-23

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

V.S.,

     Defendant-Appellant,

and

J.R.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.M-C.,
a minor.

_____

     Submitted July 9, 2024 – Decided August 2, 2024

     Before Judges Gilson and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FG-20-0034-16.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Mark E. Kleiman, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In 2017, V.S. (Valerie) voluntarily surrendered her parental rights to her daughter, M.M-C. (Maureen), a disabled child with extensive special medical needs.[1] In 2022, Valerie, for the second time, moved to open and vacate the judgment that terminated her parental rights. The family court found that Valerie had shown neither sufficiently changed circumstances nor that it would be in Maureen's best interests to vacate the judgment. In support of those findings, the court also noted that Maureen was now with a resource family that

---

[1] We use initials and fictitious names to protect the privacy interests of the family and the confidentiality of the record. See R. 1:38-3(d)(12).

had demonstrated it could care for her special medical needs and that the family was committed to adopting Maureen.

Valerie now appeals from the family court's orders denying her motion to vacate the judgment under Rule 4:50-1 and denying her motion for reconsideration. Because the family court's findings are supported by substantial, credible evidence, and because the family court's legal conclusions are consistent with the governing law, we affirm.

I.

Valerie gave birth to Maureen in February 2012. Maureen was born prematurely at thirty-three weeks and has had extensive special medical needs since birth. Maureen's biological father executed a general surrender of his parental rights and is not a party to this appeal.

In 2013, Valerie left Maureen in the care of a person who was not able to meet Maureen's special medical needs. As a result, Maureen was hospitalized. Shortly thereafter, the Division of Child Protection and Permanency (the Division) obtained custody of Maureen. Since then, Maureen has been in the care and custody of the Division.

Following a fact-finding hearing, in January 2014, the family court found that Valerie had abused or neglected Maureen. Valerie appealed from the order

making that finding, but we affirmed. N.J. Div. of Child Prot. & Permanency v. V.S., No. A-1006-14 (App. Div. Nov. 3, 2017).

From late 2013 until early 2023, Maureen resided in the long-term care unit of the Children's Specialized Hospital in New Jersey. An October 11, 2022 report from the Children's Specialized Hospital described Maureen's conditions and needs:

> [Maureen's] medical conditions are complex and permanent. Her profound hypotonia prevents her from ambulating independently, eating by mouth, adequately clearing her tracheal secretions and maintain[ing] adequate ventilation/oxygenation at night without the support of a ventilator. [Maureen] is dependent on others for all of her activities of daily living needs. She is dependent on a wheelchair for all of her mobility and assistive device[s] for communication.

In 2016, Valerie pled guilty to second-degree robbery, N.J.S.A. 2C:15-1(a), and was sentenced to five years in prison. Before she started her prison term, in March 2017, Valerie executed a general surrender of her parental rights to Maureen. In making that surrender, Valerie completed a form in which she stated that she understood that "even if [she] change[d] [her] mind at any time in the future," Maureen would "not be returned to [her] because the surrender [was] irrevocable and binding." Valerie also acknowledged that at that time, she could not care for Maureen, and she was informed that the Division's plan

was to find an adoptive home with a family that could care for Maureen's special medical needs. The family court then executed a judgment terminating Valerie's parental rights and giving guardianship of Maureen to the Division.

In July 2019, Valerie moved under Rule 4:50-1 to vacate the March 2017 judgment terminating her parental rights to Maureen. In support of her motion, Valerie submitted a certification describing the changes in her circumstances. She explained that she had been paroled from prison and was living at a halfway house. Valerie also stated that she had completed in-patient and out-patient substance abuse treatment programs. In addition, she submitted a report of a psychological evaluation performed by Dr. Andrew Brown in July 2019. In his report, Dr. Brown opined that Valerie had the requisite psychological and cognitive abilities to parent Maureen and that she would not pose a danger to the child.

The family court denied Valerie's motion to vacate the judgment without prejudice. The court found that it was not in Maureen's best interests to restore Valerie's rights and to delay permanency while Valerie finished her sentence, re-established herself in the community, and tried to demonstrate that she could remain sober and parent Maureen. The court also found that Dr. Brown's report was not reliable because his conclusions were based on an interview of Valerie,

A-0360-23

and she had not been accurate in describing her background and circumstances. Specifically, the court noted that Dr. Brown failed to address the many prior opportunities that Valerie had for rehabilitation before she had surrendered her parental rights. Valerie appealed from that order, but we rejected her arguments and affirmed. N.J. Div. of Child Prot. & Permanency v. V.S., No. A-0453-19 (App. Div. July 6, 2020). Like the family court, we noted that the order was without prejudice and, therefore, Valerie could file a new motion provided she could satisfy the governing criteria. Id. at 4.

In 2021, the Division identified a resource family that was interested in potentially adopting Maureen. That family resided in Illinois and had previously adopted another child with complex medical needs from the Children's Specialized Hospital.

In August 2022, Valerie filed a second motion to vacate the judgment terminating her parental rights. In support of that motion, she submitted an updated certification explaining the changes in her circumstances, which included her completion of substance abuse treatment programs, her complete release from prison, that she was employed, and that she had begun attending Passaic County Community College. Valerie also resubmitted the 2019 report from Dr. Brown.

After conducting a hearing, the family court denied Valerie's motion in an order entered on October 6, 2022. The court found that Valerie had not established that she was able to care for Maureen "in a non-institutionalized setting." The court noted that at that time, Valerie was not yet living on her own. The court emphasized that Maureen needed permanency and an "opportunity to live in a home" outside institutionalized care. The court also acknowledged that the Division was still working with the potential resource parents it had located in Illinois to see if Maureen could live with them. The court found that it would not be in Maureen's best interests to interfere with that process.

Valerie moved for reconsideration. She argued that Maureen's potential adoption by the family in Illinois was still "speculative" and that the Division had inadequately considered the option of Valerie and Maureen living with Valerie's mother. The court denied Valerie's motion for reconsideration in an order entered on December 2, 2022. In its oral opinion, the court again emphasized the lack of proof regarding whether Valerie could care for Maureen in a home setting and the need for permanency for Maureen.

Valerie appealed the October 6, 2022 and December 2, 2022 orders. While the appeal was pending, Valerie moved to supplement the record and

A-0360-23

remand the matter to the family court. On June 12, 2023, we granted that motion and directed that on remand, the family court was to consider the supplemental materials and then issue a new order on Valerie's motion to vacate the judgment terminating her parental rights.

On August 29, 2023, the family court conducted a hearing, considered those additional materials, and heard testimony. Three witnesses testified at the hearing: Valerie; T.C. (Thomas), one of Maureen's resource parents; and Debbie Gomez, the caseworker supervising Maureen's care.

Valerie testified that while she was incarcerated, she kept in contact with Maureen's social worker. She explained that once she was released to a halfway house, she began visiting Maureen once per month and more frequently after she began living in a sober living home. She also explained that since Maureen's placement with the resource family, she had regularly called the family and Maureen.

Concerning her changed circumstances, she explained that following her release from prison, she obtained a driver's license, has paid child support, moved into an apartment, began working two jobs, and has remained sober. Valerie acknowledged that she has not remained involved in Maureen's medical care, but she was aware of Maureen's medical needs. She expressed a

willingness to undertake the training that would be necessary for her to care for Maureen.

Thomas testified that he and his wife met Maureen in December 2017, when they were "in the process of adopting [their] youngest son, who was a resident at the Children's Specialized Hospital" and who had been Maureen's roommate at the hospital. He explained that after his family had expressed an interest in adopting Maureen, he had arranged for a home study for Maureen. He also explained that between July 2022 and Maureen's placement with the family in February 2023, he and his wife had visited Maureen every couple of weeks and had received training on how to meet her medical needs.

Concerning his family's ability to care for Maureen, Thomas detailed that he and his wife had previously adopted a medically-complex child and that they were prepared to learn how to meet Maureen's needs. In that regard, he stated that the family worked with a team of nurses to meet their children's medical needs. He then described the medical equipment Maureen used and the progress she had made since coming to live with his family. He also explained that Maureen had a good relationship with the other children and that she appeared to be enjoying spending time with and playing with the other children in the family.

Gomez testified about the Division's efforts to consider other placements for Maureen, including two of Valerie's relatives. She then explained that the Division's plan for Maureen was adoption.

On September 13, 2023, the family court issued an oral decision and written order denying Valerie's second motion to vacate the 2017 judgment terminating her parental rights. The court explained that it found all three witnesses to be credible. The court then addressed the two-prong test for assessing whether a judgment terminating parental rights should be vacated. In that regard, the court correctly noted that Valerie had to demonstrate (1) a change of circumstances and (2) that it was in Maureen's best interests to vacate the judgment. The court also correctly recognized that the focus was on the effect on and the best interests of the child.

Regarding the first prong, the court commended Valerie's efforts to change her circumstances but found that Valerie had "failed to demonstrate exceptional circumstances to warrant vacating [the judgment] terminating her parental rights." The court found that Valerie's certification and her testimony focused on her change of circumstances but did not explain how she would be able to care for Maureen's special medical needs. The court also found that Valerie's rehabilitation was relatively "recent[]." The court noted that Valerie

did not have a viable or concrete plan for caring for a special needs child while working two jobs and attending college.

Concerning the second prong of the test, the court found that Maureen's interests were "better-served by continuing a path of permanency and stability" with her resource family, who could care for her significant medical needs. In that regard, the court found that Maureen's "placement with a family since February 2023 that is ready, willing, and able to adopt her creates . . . a hurdle that is too high for [Valerie] to overcome."

The court also found that the 2019 psychological report from Dr. Brown was outdated and did not provide any insight into Valerie's relationship with Maureen. Finally, the court noted that Valerie's voluntary surrender of her parental rights was made when she was fully aware that her decision was irrevocable and binding. So, the court entered an order denying Valerie's second motion to vacate the judgment and her motion for reconsideration.

Valerie now appeals from the family court's September 13, 2023 order. Effectively, she is also appealing from the October 6, 2022 and December 2, 2022 orders.

A-0360-23

II.

On appeal, Valerie makes three arguments. First, she contends that the family court erred because, under Rule 4:50-1(e), it is no longer equitable to enforce the judgment terminating her parental rights. Second, she asserts that the judgment should be vacated under Rule 4:50-1(f) because there are truly exceptional circumstances justifying that relief. Finally, she argues that due process and fundamental fairness require that we reverse the order denying her motion to vacate the judgment, or, in the alternative, remand for further proceedings. The record and law do not support any of these arguments.

A voluntary surrender of parental rights is "irrevocable except at the discretion of the Division . . . or upon order of a court of competent jurisdiction." N.J.S.A. 30:4C-23. A former parent seeking relief from a judgment terminating her or his parental rights can file a motion under Rule 4:50-1. In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002); State Div. of Youth & Fam. Servs. v. T.G., 414 N.J. Super. 423, 434 (App. Div. 2010). In evaluating a motion to vacate a judgment terminating parental rights, courts apply a two-prong test. T.G., 414 N.J. Super. at 434. First, the motion "must be supported by evidence of changed circumstances." Ibid. (emphasis omitted) (quoting J.N.H., 172 N.J. at 473). Second, the best interests of the child must be considered. Id. at 435. In

considering the second prong of the test, a court must "weigh[] . . . the effects setting aside the judgment may have on the child's stability and permanency." Ibid. "[T]he primary issue is . . . what effect the grant of the motion would have on the child." Ibid. (omission in original) (quoting J.N.H., 172 N.J. at 475). In that regard, the New Jersey Supreme Court has recognized "that the passage of time in a parental termination case, especially where a child has successfully adjusted to a long-term placement, is of much greater significance than it would be in practically any other context." J.N.H., 172 N.J. at 475.

In moving to vacate the judgment that terminated her parental rights to Maureen, Valerie relied on subsections (e) and (f) of Rule 4:50-1. Under subsection (e), the court has the discretion "to relieve a party from a final judgment or order if that party can show that 'it is no longer equitable that the judgment or order should have prospective application.'" Hous. Auth. of Morristown v. Little, 135 N.J. 274, 285 (1994) (quoting R. 4:50-1(e)). Accordingly, a motion under subsection (e) must be supported by evidence demonstrating a change of circumstances and "'that events have occurred subsequent to the entry of a judgment that, absent the relief requested, will result in "extreme" and "unexpected" hardship.'" F.B. v. A.L.G., 176 N.J. 201, 208 (2003) (quoting Hous. Auth. of Morristown, 135 N.J. at 285).

A-0360-23

Rule 4:50-1(f) states that a final judgment may be vacated for "any other reason justifying relief from the operation of the judgment or order." The Court has explained that because of the importance "'attach[ed] to the finality of judgments, relief under Rule 4:50-1(f) is available only when "truly exceptional circumstances are present."'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 484 (2012) (citation reformatted) (quoting Hous. Auth. of Morristown, 135 N.J. at 286). The Court has also explained that "[r]egardless of the basis, vacation of a judgment under Rule 4:50-1 should be granted sparingly." J.N.H., 172 N.J. at 473-74 (citation reformatted).

"The decision whether to vacate a judgment on one of the six specified grounds [delineated in Rule 4:50-1] is a determination left to the sound discretion of the trial court, guided by principles of equity." MTAG v. Tao Invs., LLC, 476 N.J. Super. 324, 333 (App. Div. 2023) (quoting F.B., 176 N.J. at 207). "On appeal, '[t]he decision granting or denying an application to open a judgment will be left undisturbed unless it represents a clear abuse of discretion.'" Ibid. (alteration in original) (quoting Hous. Auth. of Morristown, 135 N.J. at 283). An abuse of discretion occurs when a decision is "made without a rational explanation, inexplicitly departed from established policies,

or rested on an impermissible basis." Ibid. (quoting US Bank Nat'l Ass'n, 209 N.J. at 467).

A.     The Changed Circumstances.

Valerie argues that the judgment terminating her parental rights to Maureen should be vacated under Rule 4:50-1(e) because she has rehabilitated herself and because the psychological report from Dr. Brown showed that she was capable of parenting Maureen. The family court thoroughly considered the evidence of Valerie's change of circumstances. The court correctly acknowledged that Valerie's efforts were commendable, but it also correctly focused on whether those changes demonstrated that Valerie was now capable of parenting Maureen. On the issue of Valerie's ability to parent Maureen, the court found that there were still several critical deficiencies. The court found that Valerie had not demonstrated that she was in a housing situation that would allow her to care for Maureen outside an institutional setting. The court also found that while Valerie had demonstrated a period of sobriety, she was still vulnerable to relapse.

Concerning the report from Dr. Brown, the family court evaluated the report and found that it was outdated and did not provide any insight into whether Valerie could care for Maureen. So, the family court rejected Dr.

Brown's opinion that Valerie had the ability to care for a disabled child with significant medical needs. Based on those findings, the family court concluded that Valerie had not met her burden of showing a sufficient change of circumstances to support her request to vacate the judgment.

Our review of the record establishes that the family court's factual findings are supported by substantial, credible evidence. Moreover, we discern no abuse of discretion in the family court's decision not to vacate the judgment terminating Valerie's parental rights to Maureen.

B.    The Best Interests of the Child.

Valerie also argues that the judgment should be vacated under Rule 4:50-1(f) because she demonstrated a willingness to accommodate Maureen's medical needs and because Maureen had not yet been adopted. Accordingly, Valerie asserts that there were "truly exceptional circumstances" justifying vacation of the judgment.

The family court found that Valerie's plan for caring for Maureen was not sufficiently specific and that there were too many uncertainties to justify vacating the termination of her parental rights. The court correctly focused on Maureen's best interests. While acknowledging that Maureen had not yet been adopted, the court found that Maureen was now with a family that could care for

her special medical needs and hopes to adopt her. The court's findings concerning Maureen's best interests are also supported by substantial, credible evidence in the record. Maureen has spent most of her life in the long-term care unit of a specialized hospital. She is now finally with a family that has the ability and training to care for her special needs. Most importantly, as the family court found, the resource family that is willing to adopt Maureen will provide her with love, support, and permanency. So, we discern no abuse of discretion in the family court's findings concerning Maureen's best interests.

C.     Due Process and Fundamental Fairness.

Finally, Valerie argues that due process and fundamental fairness require either a reversal of the order denying her motion to vacate the judgment terminating her parental rights or, in the alternative, a remand for further proceedings. In making this argument, Valerie relies on three contentions: (1) both the family court and this court had previously told her she could renew her Rule 4:50-1 motion "if she proved she had rehabilitated herself and [Maureen] had not yet been adopted"; (2) the family court's procedures were inadequate, particularly because the court failed to address her request for a comparative bonding evaluation; and (3) the family court applied the incorrect standard

because it considered Maureen's "better interests" rather than her "best interests."

Due process generally "requires adequate notice and a fair opportunity to be heard." N.J. Div. of Child Prot. & Permanency v. K.S., 445 N.J. Super. 384, 390 (App. Div. 2016) (quoting Div. of Youth & Fam. Servs. v. M.Y.J.P., 360 N.J. Super. 426, 464 (App. Div. 2003)). To evaluate whether a parent was "afforded procedural due process in a termination proceeding," courts apply the balancing test articulated by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). K.S., 445 N.J. Super. at 390-91. That test weighs (1) the private interest affected; (2) "the risk that there will be an erroneous deprivation of the interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards"; and (3) the governmental interests involved and the burden any additional procedural demands would impose. Id. at 391 (quoting M.Y.J.P., 360 N.J. Super. at 465). New Jersey courts have recognized that in termination proceedings, "'the private interest affected is commanding'" because "a parent's private interest in maintaining some relationship with his or her children is 'far more precious than any property right.'" Ibid. (first quoting Santosky v. Kramer, 455 U.S. 745, 758

(1982); and then quoting In re Adoption of a Child by J.E.V., 442 N.J. Super. 472, 481 (App. Div. 2015)).

"The doctrine of fundamental fairness 'serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily.'" State v. Saavedra, 222 N.J. 39, 67 (2015) (emphasis omitted) (quoting Doe v. Poritz, 142 N.J. 1, 108 (1995)). Courts view the doctrine as part of due process. Ibid. "The doctrine is applied 'sparingly' and only where the 'interests involved are especially compelling'; if a [party] would be subject 'to oppression, harassment, or egregious deprivation,' it is to be applied." Ibid. (quoting Doe, 142 N.J. at 108).

There has been no denial of due process concerning Valerie's right to renew her motion. Indeed, Valerie was allowed to renew her motion, and the motion was fully and fairly considered. No court previously stated or held that Valerie's motion would be granted if renewed; rather, in denying the motion that she made in 2019, the family court, as well as this court, gave her the opportunity to renew the motion if there were additional changes of circumstances and if Maureen still had not been adopted. On her second motion, Valerie was given all the process that she was due because the motion was fully and fairly

A-0360-23

considered based on the facts and circumstances. In short, due process did not require that Valerie's motion be granted; rather, it only required that she be given a full and fair opportunity to be heard.

The family court's refusal to order a bonding evaluation was also not a violation of due process or fundamental fairness. Bonding evaluations are generally required in termination proceedings. See N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 559 (2014) (explaining that in seeking to terminate parental rights, the State "should" offer testimony from an expert who had the opportunity to evaluate the child's relationship with the child's birth parents and the child's foster parents). In this case, however, the bond between Valerie and Maureen had been severed before she voluntarily terminated her parental rights in 2017. Following the abuse and neglect that occurred in 2013, Maureen had been in the care and custody of the Division. While Valerie visited Maureen after she was released from incarceration, there was no evidence that a parental bond existed after 2017. We also note that, to the extent that Valerie had re-established a relationship with Maureen, it was a relationship based on periodic visitation. The family that is now seeking to adopt Maureen is willing to allow Valerie to continue regular communication with Maureen. Consequently, we

discern no reversible error in the family court's failure to order a bonding evaluation given the circumstances of this case.

Finally, we reject Valerie's contention that the family court improperly considered Maureen's "better interests" rather than her best interests. The family court correctly applied the two-prong test in evaluating Valerie's change of circumstances and Maureen's best interests. Although the court stated that Maureen's "interests are better-served by continuing a path of permanency and stability" with the resource family, the court was clearly focused on Maureen's best interests. The family court did not conclude that the resource family could provide a better upbringing for Maureen than Valerie could provide for her. Instead, properly focusing on Maureen's best interests, the court found that the resource family was Maureen's best option for living in a loving home setting rather than returning indefinitely to an institutional setting while Valerie tried to obtain appropriate housing, medical training, and supervision for Maureen. In short, the record fully supports that Maureen's best interests are served by denying Valerie's motion to vacate the judgment and allowing Maureen to be adopted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21

A-0360-23