# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4905-14T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.S.,

     Defendant-Appellant,

and

A.L., SR.,

     Defendant.
_____

IN THE MATTER OF THE GUARDIANSHIP
OF A.L., JR., and A.K.L.,

     Minors.
_____

APPROVED FOR PUBLICATION

May 6, 2016

APPELLATE DIVISION

          Submitted April 6, 2016 — Decided May 6, 2016

          Before Judges Fuentes, Koblitz, and Gilson.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Family Part, Passaic
          County, Docket No. FG-16-72-15.

          Joseph E. Krakora, Public Defender, attorney
          for appellant (Christine Olexa Saginor,
          Designated Counsel, on the brief).

Robert Lougy, Acting Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ramiro A. Perez, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

The opinion of the court was delivered by

KOBLITZ, J.A.D.

Defendant-appellant K.S.,[1] the biological mother of four young children,[2] appeals from the termination of her parental rights.[3] Before the Family Part's decision was rendered, she was precluded from testifying because she appeared after the close of evidence. We reverse and remand to give the mother the opportunity to present her testimony.

We will only present a brief summary of the background underlying the termination of K.S.'s parental rights. K.S.'s mother suffered from mental illness and was hospitalized throughout these proceedings. K.S. had a poor relationship with her father. She was sexually abused by her father and two

---

[1] We use initials to protect the confidentiality of the participants in these proceedings. See R. 1:38-3(d)(10), (12).

[2] Only K.S.'s two oldest children are subject to this appeal.

[3] A.L., Sr., the biological father of the two oldest children, could not be found and an affidavit of diligent inquiry was filed with the trial court. A default judgment of guardianship terminating his parental rights was entered by reason of abandonment, N.J.S.A. 30:4C-15.1(b)(1)(a)-(b).

cousins. K.S. was raised by her aunt, who physically abused her. When K.S. was fifteen, K.S.'s aunt no longer wanted to care for K.S. and K.S. was placed in foster care. At the age of eighteen, K.S. attempted suicide. When she was twenty years old, in 2009, she gave birth to her son, A.L., Jr. She then married his father, A.L., Sr., who joined the United States Army and was separated from the family.

In 2010, K.S. left her nine-month-old son with a family friend in unsuitable housing, promising to return the next day. K.S. did not return the following day, and three days later, the Division of Child Protection and Permanency (Division) became involved, taking custody of the baby. Six days after leaving her son, he was returned to K.S.

In 2013, K.S. gave birth to her daughter, A.K.L. Less than seven months after A.K.L. was born, the Division reopened its case, having received a referral of neglect. K.S. had left the children with someone who subsequently abandoned them, leaving the children alone in the home. The two young children were then dropped off with relatives who could not care for the children. The children were subsequently placed together with the same resource family, where they remain.

As with virtually all parents facing the termination of

their parental rights,[4] K.S.'s poverty rendered her eligible for assigned counsel. See N.J.S.A. 30:4C-15.4. K.S. was diagnosed as suffering from alcohol abuse, frequently testing positive for alcohol.[5] She also tested positive for marijuana and was diagnosed with mental illness, including "major depressive disorder" and "paranoid ideation." Psychological testing revealed borderline intellectual functioning, a poor short-term working memory and cognitive limitations that contributed to her lack of work history and unstable housing. Both fathers of her children were violent. During the court proceedings K.S. was hospitalized due to injuries caused by this violence. She was housed in a domestic violence shelter in Camden County. The Division's attorney and K.S.'s assigned lawyer both indicated she had trouble finding transportation to some services, as well as to the Passaic County Courthouse. She missed many appointments for evaluations, services and visits with her children.[6]

---

[4] See Santosky v. Kramer, 455 U.S. 745, 763, 102 S. Ct. 1388, 1399-400, 71 L. Ed. 2d 599, 612 (1982) (recognizing that "parents subject to termination proceedings are often poor[ and] uneducated").

[5] Alcohol use disorder is a recognized psychological condition. Diagnostic and Statistical Manual of Mental Disorders 490 (Am. Psychiatric Ass'n ed., 5th ed. 2013).

[6] In 2015, K.S. gave birth to her third child, who was also placed with the same resource family. Information regarding the fourth child is not a part of the record on appeal.

The trial testimony took place on June 9, 2015, after K.S. participated in unsuccessful mediation. K.S. did not appear. The following day, the lawyers convened to prepare an evidence sheet. On June 19, ten days after the single day of testimony, the trial resumed for the judge to orally present his findings and distribute his written decision. K.S. appeared and sought to "present evidence on her behalf." Her assigned attorney represented that K.S. thought the trial began on June 10. The attorney stated that K.S. had inquired about the trial at the Children in Court office on June 10 and was told that the trial was over. The Law Guardian advised the judge that the mediator had informed K.S. that trial was scheduled for June 9 and June 10. The trial judge denied K.S.'s application to reopen the case, finding that K.S. had notice of the correct trial date and chose not to appear. The judge based his finding on her history of failing to attend scheduled judicial proceedings.

On appeal, K.S. raises the following issues:

> POINT I: The Judgment of Guardianship Must Be Vacated and the Matter Remanded for a New Trial as [K.S.] was Unreasonably Denied an Opportunity to Participate at Trial.

> POINT II: The Trial Court Incorrectly Applied the Legal Principles Governing Termination of Parental Rights Matters to the Facts. The Record Falls Short of Satisfying Those Exacting Standards and Therefore Termination of [K.S.]'s Rights Should Not Be Affirmed.

A-4905-14T2

A. The Division Failed to Produce Clear and Convincing Evidence That [K.S.] Ever Harmed Her Children.

B. The Division Failed to Produce Clear and Convincing Evidence That [K.S.] Was Unwilling or Unable to Eliminate Any Perceived Harm to Her Children.

C. The Division Failed To Prove By Clear and Convincing Evidence That [K.S.] Was Provided With Services Reasonably Calculated to Assist Her in Reunification.

D. The Division Failed to Produce by Clear and Convincing Evidence that Termination of [K.S.]'s Parental Rights Serves the Best Interests of the Children.

We reverse and remand to give K.S. an opportunity to present testimony. We review a trial judge's decision not to reopen the record to take testimony under the abuse of discretion standard. See Quick Chek Food Stores v. Springfield, 83 N.J. 438, 445-46 (1980). Our Supreme Court has recognized that "[n]o hard and fast rule for the guidance of his [or her] discretion can be laid down." State v. Wolf, 44 N.J. 176, 191 (1965). The trial judge abused his discretion in refusing K.S.'s request to reopen the record shortly after the one-day trial and before the trial judge issued his decision. Under these circumstances, not allowing K.S. to testify deprived K.S. of the procedural due process she was constitutionally entitled to prior to permanently severing her relationship with her children.

"A parent's right to raise and maintain a relationship with his or her child is constitutionally protected." N.J. Div. of Child Prot. & Permanency v. N.C.M., 438 N.J. Super. 356, 367 (App. Div. 2014), certif. denied, 222 N.J. 18 (2015). Before terminating a parent-child relationship, the State must satisfy the fundamental requirements of procedural due process as provided in the United States and New Jersey constitutions. See U.S. Const. amend. XIV, § 1; N.J. Const. art. I, ¶ 1.

In general terms, "[d]ue process requires adequate notice and a fair opportunity to be heard." Div. of Youth & Family Servs. v. M.Y.J.P., 360 N.J. Super. 426, 464 (App. Div.), certifs. denied, 177 N.J. 575 (2003), cert. denied, 540 U.S. 1162, 124 S. Ct. 1176, 157 L. Ed. 2d 1207 (2004). "When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." Santosky, supra, 455 U.S. at 753-54, 102 S. Ct. at 1395, 71 L. Ed. 2d at 606.

To determine whether a parent was afforded procedural due process in a termination proceeding, we must evaluate the governmental procedures under the balancing test enunciated by the United States Supreme Court in Matthews v. Eldridge, 424 U.S. 319, 334-35, 96 S. Ct. 893, 902-03, 47 L. Ed. 2d 18, 33 (1976). See M.Y.J.P., supra, 360 N.J. Super. at 465 (adopting

the Matthews test in New Jersey).  Under the Matthews balancing test, the court must carefully balance the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk that there will be an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the governmental interest involved, including the added fiscal and administrative burdens that additional or substitute procedures would require."  Ibid.

In considering the first factor of the Matthews test, we recognize that a parent's private interest in maintaining some relationship with his or her children is "far more precious than any property right."  In re Adoption of J.E.V., 442 N.J. Super. 472, 481 (App. Div.) (quoting Santosky, supra, 455 U.S. at 758-59, 102 S. Ct. at 1397, 71 L. Ed. 2d at 610), certif. granted, 223 N.J. 558 (2015).  Compared to the other Matthews factors, "[i]n parental rights termination proceedings, the private interest affected is commanding."  Santosky, supra, 455 U.S. at 758, 102 S. Ct. at 1397, 71 L. Ed. 2d at 609.  We recently noted that "[a]fter the elimination of the death penalty, we can think of no legal consequence of greater magnitude than the termination of parental rights."  J.E.V., supra, 442 N.J. Super. at 481 (footnote omitted).

Children are entitled to permanency, which at times may restrict a parent's testimonial right. See In re Guardianship of J.C., 129 N.J. 1, 26 (1992) (noting that "children have an essential and overriding interest in stability and permanency"). Whenever practicable, however, the parents' and children's rights should both be accommodated. See M.Y.J.P., supra, 360 N.J. Super. at 470 (recognizing, where a mother in Haiti could not attend the termination trial, but accommodations including her videotaped de bene esse testimony were provided, that "the children's right to a prompt determination of their status is just as important as the interest of the" mother in attending the trial (quoting In re Dean L., 490 N.Y.S.2d 75, 76 (App. Div. 1985))).

The second factor, the risk of error and the value of additional procedural safeguards, similarly weighs in favor of allowing K.S. to testify after the close of evidence. Because the termination of parental rights is based upon an individualized evaluation of the factual circumstances, a complete record is constitutionally necessary and a parent must be liberally afforded the right to be heard before executing the severance of the parent-child relationship. See N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 288 (2007) (recognizing that parental fitness should be "evaluated on an

individual basis" to satisfy due process). In declining to reopen the record, a court exposes itself to the risk of a deficient narrative, thereby not only depriving the parent of his or her right to testify to keep his or her children, but also depriving the children of their right to have the court fully informed before making the final decision. Although the Law Guardian sided with the Division, arguing at trial that K.S. should not be allowed to testify, and continues that position on appeal, the children are better served by a thorough presentation of the evidence, which includes their biological mother's testimony.

As to the third Matthews factor, although the State has an interest in efficiency and in reducing "the cost and burden of the proceedings," M.Y.J.P., supra, 360 N.J. Super. at 470, allowing K.S. to testify would have imposed only a minimal burden on the proceedings. See State v. Cullen, 428 N.J. Super. 107, 112 (App. Div. 2012) (finding that "the judge erroneously gave greater weight to expedience and the brief delay that would result than he gave to defendant's constitutional right to testify on his own behalf"). K.S. made her request to testify shortly after the one-day bench trial. No jury was involved and presumably all counsel were prepared to immediately proceed with the direct and cross-examination of K.S. because they had

expected her to appear at trial. The judge had not yet rendered a decision and would have needed only a short period of time to revise his written opinion. Thus, allowing K.S. to testify would not have materially delayed the proceedings.

Our Supreme Court has considered the decision to reopen the record in the criminal context. See Wolf, supra, 44 N.J. at 184, 191-92. In Wolf, the trial judge refused to reopen the criminal proceedings to allow the State's cooperating witness to be further cross-examined after the jury began deliberations. Id. at 184, 192. Defense counsel requested to reopen cross-examination because the defendant claimed, prior to summations, that the cooperating witness had called him to recant his sworn testimony. Id. at 191-92. When reversing the conviction, which resulted in a sentence of life imprisonment,[7] the Court held:

> It seems sufficient to say that when a citizen's life is at stake a trial in a court of justice is not a game and the judge is more than an umpire. And so, when the ends of justice will be served by a reopening, it ought to be done.
>
> [Id. at 191.]

---

[7] At that time, a defendant sentenced to life imprisonment was eligible for parole after twenty-five years in custody, minus credit for "work time" and "good time." See N.J.S.A. 2A:113-4, repealed by Act of Sept. 1, 1979, ch. 95, 1979 N.J. Laws 95, N.J.S.A. 2C:98-2; see also State v. White, 27 N.J. 158, 171 (1958).

Here, in a case of great importance, where the termination of parental rights was at stake, reopening the record was necessary to ensure justice.

The trial judge did not recognize other reasons in the record which may have contributed to K.S.'s failure to appear on the first scheduled trial date. Similar to most parents facing termination of their parental rights, K.S. suffered from substance abuse and cognitive impairments, was diagnosed with mental illness, and was a victim of domestic violence.[8] K.S. herself was placed in foster care as a child. She endured unstable housing, difficulties with transportation, and other consequences of poverty. K.S. suffered from various mental health conditions and other stressors, lessening her blameworthiness for her confusion about the trial date. Further, we consider it to be in the best interests of the children to allow K.S. to testify as to why her parental rights should not be terminated. What harm could possibly befall the

---

[8] In 2011, the New Jersey Office of Performance Management and Accountability issued a report providing information collected from screeners in child abuse or neglect cases. See Allison Blake, The New Jersey State Central Registry 2011 Assessment, Office of Performance Mgmt. & Accountability (July 2012), http://www.nj.gov/dcf/about/divisions/opma/SCRReport_7%2026%2012 .pdf. According to the report, based on a sample size of 239 Child Protective Services calls, 81% indicated the existence of substance abuse in the home, 79% involved domestic violence, and 68% involved mental health issues. Ibid.

children from giving their mother an opportunity to express what she believes is in their best interests?

A parent facing the termination of parental rights is entitled to every reasonable opportunity to produce evidence. If the parent seeks to reopen the record to testify after the close of evidence, the trial court is constitutionally obligated to grant the request as long as it does not interfere with the children's "essential and overriding interest in stability and permanency." J.C., supra, 129 N.J. at 26. Thus, we reverse and remand to allow K.S. to testify, after which the court must consider that testimony and make a new decision.

Reversed and remanded for forty-five days to allow K.S. to testify, all parties to inform the trial court of any important updates in the situation, and the judge to make a new decision. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION