# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1627-17T4

NEW JERSEY DIVISON OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

A.L.,

     Defendant-Appellant,

and

B.K.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF S.L.,

     a Minor.

_____

Submitted October 23, 2018 – Decided December 4, 2018

Before Judges Yannotti and Gilson.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FG-15-0002-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark E. Kleiman, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Salima E. Burke, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

A.L. appeals from an order of the Family Part dated November 15, 2017, which denied her motion to vacate the identified surrender of her parental rights to the minor child, S.L. We affirm.

I.

A.L. is the mother of S.L., who was born in October 2011. The Division of Child Protection and Permanency (Division) became involved with the family two days after S.L.'s birth, when the Division learned A.L. had tested positive for opiates. The Division investigated the report. A.L. admitted she had taken prescribed opiate pain medication and had a history of abusing alcohol. Upon completion of its investigation, the Division determined that the allegations of

2

neglect were unfounded; however, the Division kept the case open for services. In December 2011, after a random drug screen, A.L. tested positive for opiates. In February 2012, a paternity test established that B.K. was S.L.'s biological father. In February 2013, the Division closed the case.

In June 2013, the Division received a report from a local police department indicating concerns for S.L.'s safety and welfare. The report noted that A.L. was a known alcoholic, and that A.L. left the child alone for twenty minutes in a motel room, while she sat in a car in the parking lot with a friend.

In July 2013, the Division received a report from another local police department, advising the Division of concerns about the child's safety and welfare. It appears that A.L. and the child were staying with A.L.'s parents. According to the report, the police had responded to the home because A.L.'s grandfather was intoxicated and making homicidal threats against A.L.'s grandmother. The report noted that A.L. had been intoxicated.

A Division worker investigated the report. A.L. told the worker she had been sober for some time, but she had recently relapsed. The worker asked A.L. where the child was when she was drinking. She did not reply. The worker saw no immediate safety concerns, but implemented a temporary safety protection plan for the child.

A.L.'s grandmother agreed to supervise A.L.'s care of the child that evening. The following day, the Division's case manager and an individual who handles domestic violence visited the home unannounced. According to the case manager, A.L. appeared intoxicated and became hysterical at the thought S.L. might be removed from her care. The Division's workers suggested that A.L.'s grandmother seek a domestic violence restraining order, but she refused.

The Division decided that it could not permit S.L. to remain in the home due to concerns about the grandfather's alcohol abuse. A.L.'s grandmother indicated that she could not care for S.L., and she did not want A.L. in her home. She also did not know of any other family members who might be available to care for S.L. At the time, B.K. was apparently homeless.

The Division conducted an emergency removal of S.L., and on July 8, 2013, filed an order to show cause and verified complaint in the Family Part seeking care, custody, and supervision of S.L. On that date, the court granted the Division's application. On September 18, 2013, the court conducted a fact-finding hearing and A.L. stipulated she had abused or neglected the child. She admitted she had ingested a substantial amount of alcohol and became highly intoxicated while caring for S.L., who was then twenty-one months old.

Thereafter, the Division provided A.L. and B.K. with an array of services. In June 2014, the trial court conducted a hearing and approved the Division's permanency plan, which called for reunification of S.L. and A.L. In July 2014, the court approved the return of S.L. to A.L.'s care, and the Division closed the case several months later.

In October 2015, the Division received a report that A.L. had been abusing alcohol during the previous three to four weeks, and was in the hospital for detoxification. The Division investigated the report and learned that the police had responded to A.L.'s home in September and October 2015, because of A.L.'s intoxication.

The Division also learned that since sometime in September 2015, S.L. had been staying with A.L.'s maternal great aunt, and A.L. had been in hospitals numerous times due to her alcohol abuse. On October 16, 2015, a Division worker went with a police escort to meet A.L. at her mother's residence. A.L. appeared to be intoxicated. Several days later, the local police reported that A.L. had been intoxicated and had gotten in a verbal dispute with her grandmother.

On October 23, 2015, the Division filed an order to show cause and a verified complaint in the Family Part, seeking care, custody and supervision of

S.L. The court granted the Division's application, and the Division again placed S.L. with T.E. In November 2015, the Division found that the allegations of abuse and neglect stemming from the October 2015 report were not substantiated because A.L. had arranged to have her great aunt care for the child when she was not capable of doing so.

The Division continued to provide A.L. services with the goal of reunification. The services included random urine screens, substance abuse evaluations, and treatment referrals. However, from November 2015 to Feb.ruary 2016, A.L. continued to abuse alcohol. A.L. also was hospitalized due to alcohol consumption, and she missed several scheduled visits with S.L. On February 4, 2016, the court suspended all visitation until A.L. fully engaged in substance abuse treatment.

In April 2016, the court conducted a hearing and approved the Division's new permanency plan, which called for termination of A.L. and B.K.'s parental rights to S.L., followed by adoption. On July 1, 2016, the Division filed its guardianship complaint.

The court scheduled the matter for trial in March 2017. About two weeks before the scheduled trial date, A.L. requested a hearing so that she could

execute an identified surrender of her parental rights to S.L. so that T.E. could adopt the child.

On February 21, 2017, A.L. completed the "Voluntary Surrender of Parental Rights Form" and testified in court that she wanted T.E. to adopt S.L. She stated that she believed this decision was in the child's best interests. A.L. told the judge her decision to surrender her parental rights was voluntary, and she had accurately answered the questions on the form.

At the hearing, the judge questioned A.L. concerning the surrender of her parental rights. In response to the judge's questions, A.L. testified that she had engaged in conversations with her attorney concerning the concept of surrender, that counsel had answered all of her questions, and that she had sufficient time to consider her decision.

A.L. also stated that she understood her surrender would be final and that her parental rights would only be reinstated if T.E. could not adopt S.L. She further testified that she understood any promises T.E. made indicating she could maintain contact with S.L. would be unenforceable. A.L. told the judge she was making her decision willingly, freely, and voluntarily, and she was not being forced, threatened or coerced.

The judge found that A.L.'s surrender of her parental rights was knowing and voluntary. The judge later conducted a trial on the Division's complaint seeking termination of B.K.'s parental rights to S.L. The judge found the Division had established the four prongs of the test in N.J.S.A. 30:4C-15.1(a) for termination of B.K.'s parental rights.

On March 20, 2017, the court entered a judgment of guardianship terminating A.L. and B.K.'s parental rights to S.L. for purposes of adoption by T.E. B.K. passed away sometime later. The court scheduled S.L.'s adoption for November 16, 2017. On November 10, 2017, A.L. filed a motion to vacate her surrender of parental rights.

On November 15, 2017, the judge conducted a hearing on the motion, and A.L. testified under oath. A.L. stated that she was about to complete an intensive alcohol abuse treatment program. She claimed she regularly attends meetings of Alcoholics Anonymous, and has a sponsor and support network. She asserted that she has spoken each week with S.L., and could not "live knowing that" T.E. could preclude her from communicating with the child.

A.L. also stated she never gave up on having S.L. returned to her, and she was now in a position to parent the child. She asserted that she has a full-time job, she made a deposit for her own home, and her driver's license would soon

be restored. A.L. claimed she had signed the surrender-of-parental-rights form under duress.

A.L. stated that she had "felt intimidated" when she signed the form, and had been coerced into doing so. She told the judge she "made a poor decision," and her attorney did not represent her "properly." She claimed her attorney advised her she might never see S.L. again if she went forward with the trial. She also claimed the Division's caseworker told her "that parents usually give up their rights at this point," and that the caseworker would be "against" her at trial.

A.L. stated that the caseworker stated that if she voluntarily surrendered her parental rights, she would have her daughter "in [her] life" and she would be able to see her whenever she wanted to. She asserted that the caseworker told her she could call the child, take her to the movies, and have her for weekends. According to A.L., the caseworker stated that if she went to trial, she "would surely lose" S.L., and she might never see her daughter again.

A.L. further testified that she was under the influence of Percocet on the day she surrendered her parental rights. She stated that when the judge had asked her if she was under the influence of any drugs, prescription medications,

or alcohol, she replied "no" because she was upset. She claimed she was focused on avoiding alcohol, and she took medication that had been prescribed.

The judge placed his decision on the record. The judge found there was no support in the record for A.L.'s claim that she surrendered her parental rights to S.L. due to coercion, duress, or fraud. The judge noted that at the hearing on the surrender, A.L. testified that she made the decision voluntarily, and under her own will. She had denied that she executed the surrender-of-parental-rights due to coercion, threats, pressure, force, or promises.

The judge pointed out that he had questioned A.L. to confirm that she understood her decision, including the fact that she "would have no legal or other right to any contact with the child in the future." The judge noted that A.L. confirmed her understanding of the surrender. The judge also noted that he asked A.L. if she was "under the influence of drugs, alcohol, or prescription medication [that] has affected [her] ability to make a clear decision." She replied, "No, I am not."

The judge added that when A.L. agreed to surrender her parental rights, she told the court she understood what she was doing. She stated under oath that she had spoken with her attorney before the hearing, and counsel had spent

sufficient time with her, answered her questions, and provided her with satisfactory advice. The judge found:

> [A.L.] had every opportunity to tell the [c]ourt then what you're saying now, nine months later, almost three quarters of a year after you gave your surrender, on the eve of the child's adoption, a child who is entitled to permanency. You've come to the [c]ourt the day before [the adoption] to now ask that this all be erased, for information that was in your control at the time that you did not share with the [c]ourt. Why, I [do not] know, but [there is] nothing to corroborate what you're now claiming . . . was the case when you gave all of the answers that I just went through.

The judge entered an order denying the motion for reasons set forth on the record. This appeal followed.

## II.

On appeal, A.L. first argues that the trial court erred by denying her motion for relief from the identified surrender of parental rights pursuant to Rule 4:50-1(f). We disagree.

Rule 4:50-1 permits a court to grant a party relief from a final judgment or order for several reasons:

> (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under [Rule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic),

11

misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

A trial court's decision under Rule 4:50-1 should be given "substantial deference," and will not be reversed unless shown to be "a clear abuse of discretion." US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 467 (2012); see also DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009); Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994).

Here, A.L. argues the trial court should have granted her relief under Rule 4:50-1(f). "[R]elief under subsection (f) is available only when 'truly exceptional circumstances are present.'" In re Guardianship of J.N.H., 172 N.J. 440, 473 (2002) (quoting Little, 135 N.J. at 286). To determine whether a party has shown exceptional circumstances for relief under Rule 4:50-1(f), the court must consider the totality of circumstances. Id. at 474 (citing Baumann v. Marinaro, 95 N.J. 380, 395 (1984)).

In matters involving the termination of parental rights, "[t]he judgment under review uniquely affects the rights of the parent and also [has an impact

upon] the life of the child who is the object of the guardianship." Div. of Youth & Family Servs. v. T.G., 414 N.J. Super. 423, 434 (App. Div. 2010). To warrant relief under Rule 4:50-1 from a judgment terminating parental rights, the movant must show that events have occurred after the entry of the judgment, which warrant vacating the judgment, and that relief is warranted in the best interests of the child. Id. at 434-35 (citing J.N.H., 172 N.J. at 473).

In considering whether relief is warranted, the court must weigh "the effects setting aside the judgment may have on the child's stability and permanency." Id. at 435 (citing J.N.H., 172 N.J. at 474). The critical issue is the effect that granting the motion "would have on the child." Ibid. (quoting J.N.H., 172 N.J. at 475). This test applies to a motion to set aside a voluntary surrender of parental rights which results in a judgment awarding guardianship to the Division. Id. at 427, 434.

A trial court's findings of fact are binding on appeal when supported by adequate, substantial, and credible evidence. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Our deference to the findings of the Family Part is especially appropriate because of that court's expertise in matters involving the family. Id. at 412. A trial court's findings of fact "should not be disturbed unless the findings are so wholly unsupportable as to result in a denial of justice." J.N.H.,

172 N.J. at 472 (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)).

We are convinced there is sufficient credible evidence to support the judge's determination that A.L. had not shown relief from the judgment terminating her parental rights was warranted under Rule 4:50-1(f). The record supports the judge's finding that A.L. failed to establish that relief should be granted due to "truly exceptional circumstances." J.N.H., 172 N.J. at 473 (2002) (citing Little, 135 N.J. at 286).

As we noted previously, the judge found that A.L. did not execute the identified surrender of her parental rights under duress or coercion. The judge noted that A.L.'s claim she was acting under duress was totally inconsistent with the statements she made on the record when she surrendered her parental rights. The judge found that A.L.'s statements at the February 21, 2017 hearing established that A.L. had surrendered her parental rights to S.L. knowingly and voluntarily.

The record shows that when she agreed to surrender her parental rights, she informed the court that she had not been pressured, forced, or coerced into making that decision. She assured the court that she had discussed the matter with her attorney and her attorney had answered all the questions she had.

14

Moreover, A.L. told the court her attorney had provided her with satisfactory services. She stated she had sufficient time to consider her decision, and she was not under the influence of any prescription medication that would affect her judgment.

A.L. also stated that she understood she would be giving up her right to have an ongoing relationship with S.L. The judge informed A.L. that any promises T.E. made indicating A.L. could maintain contact with the child were not enforceable, and T.E. could decide at any time that she was no longer willing to allow A.L. to have contact with S.L. A.L. told the court she understood the consequences of her decision.

A.L. claimed she was not thinking clearly when she surrendered her parental rights because she took two Percocet tablets before the February 21, 2017 hearing. The judge found that A.L.'s claim was not credible. As noted previously, A.L. assured the judge she was not under the influence of any medication when she surrendered her parental rights.

We conclude the record supports the judge's finding that A.L. failed to show she established a basis for relief under Rule 4:50-1(f). She failed to show that she surrendered her parental rights to S.L. under duress or coercion, and did not credibly establish she was not informed of the consequences of her decision.

A.L. also failed to show that relief was warranted in the best interests of the child. As the judge noted, the child requires permanency, and there was no basis to delay the adoption.

In this regard, we note that at the guardianship trial, the expert testimony established that S.L. had close bonds with her resource parent and would suffer enduring psychological harm if removed from her care. The expert testimony also showed that S.L. requires permanency to avoid long-term harm to her psychological development.

### III.

A.L. further argues the order denying her motion for relief from the judgement should be reversed in the interests of due process and fundamental fairness. A.L. contends the trial court was required to conduct a plenary hearing on her motion. She contends the matter should be remanded for further proceedings. Again, we disagree.

"A parent's right to raise and maintain a relationship with his or her child is constitutionally protected." N.J. Div. of Child Prot. & Permanency v. K.S., 445 N.J. Super. 384, 390 (App. Div. 2016) (quoting N.J. Div. of Child Prot. & Permanency v. N.C.M., 438 N.J. Super. 356, 367 (App. Div. 2014)). It is well-established, however, that the parent's right is not absolute and "must be

balanced against 'the State's <u>parens</u> <u>patriae</u> responsibility to protect the welfare of children.'" <u>N.J. Div. of Youth & Family Servs. v. G.L.</u>, 191 N.J. 596, 605 (2007) (quoting <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 N.J. 261, 294-95 (2007)).

"Due process requires adequate notice and a fair opportunity to be heard." <u>N.J. Div. of Youth & Family Servs. v. M.Y.J.P.</u>, 360 N.J Super. 426, 464 (App. Div. 2003). Due process is "a flexible concept" that "calls for such procedural protections as the particular situation demands." <u>Ibid.</u> In proceedings involving the termination of parental rights, New Jersey courts employ the balancing test enunciated in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334-35 (1976), to determine whether a parent received sufficient procedural due process. <u>K.S.</u>, 445 N.J. Super. at 390-91 (citing <u>M.Y.J.P.</u>, 360 N.J. Super. at 465).

The <u>Matthews</u> balancing test requires consideration of three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk that there will be an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the governmental interest involved, including the added fiscal and administrative burdens that additional or substitute procedures would require." <u>Id.</u> at 391 (quoting <u>M.Y.J.P.</u>, 360 N.J. Super. at 465).

On appeal, A.L. argues that the procedure the judge employed to consider her motion was not sufficient to protect the interests at stake. She contends the trial court should have conducted a plenary hearing on her claim that she acted under duress or coercion when she agreed to surrender her parental rights. A.L. asserts that the judge rejected her assertions regarding the alleged representations made by A.L.'s attorney without hearing the attorney's testimony and allowing A.L. to cross-examine him. She contends the resolution of this important factual issue was not grounded in a full and fair consideration of the evidence.

We are not persuaded by these arguments. The procedures that the trial court employed in considering A.L.'s motion satisfied the applicable due process requirements. A.L. was present at the hearing on the motion and she testified under oath. Furthermore, the judge considered the record of the statements A.L. made when she agreed to surrender her parental rights.

A.L. has not shown that a plenary hearing was necessary to address her claim that she acted under duress or coercion. That claim was thoroughly refuted by the statements A.L. made at the hearing when she surrendered her parental rights. Moreover, a plenary hearing was not required to address A.L.'s claim regarding statements A.L.'s attorney made to her before she surrendered

18

her parental rights. A.L.'s claims were clearly inconsistent with the statements she made when she agreed to the surrender.

As the record shows, when A.L. surrendered her parental rights, she was asked whether anyone had forced, coerced, threatened or pressured her into making this decision. She stated, "No, they didn't." She also said her attorney had advised her and answered all of her questions. She stated that her attorney had provided her with satisfactory services.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1627-17T4