# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4666-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

R.M.,

      Defendant,

and

M.F.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF E.M.,

      a Minor.

_____

Submitted February 5, 2020 – Decided February 21, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0106-19.

Jeffrey E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Mark Edward Kleiman, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Juliana L. Stiles, Deputy Attorney General, on the brief).

Jeffrey E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

Defendant M.F.[1] appeals from a June 11, 2019 order denying her motion to vacate an identified surrender of parental rights of her daughter E.M. to the child's paternal grandmother. We affirm.

The Division of Child Protection and Permanency (Division) received its first referral in this case at E.M.'s birth in 2016, stating M.F.'s urine tested positive for marijuana and opiates, and E.M. was diagnosed with Neonatal Abstinence Syndrome and suffering from withdrawal symptoms. The Division

---

[1] We use initials to protect the child's privacy. R. 1:38-3(d)(12).

removed E.M. due to concerns M.F. and R.M., the child's father, were abusing drugs.

The Division offered the family reunification services beginning in 2016 through July 2018. However, M.F. was non-compliant with services and R.M. was incarcerated, so the trial court approved the Division's permanency plan of termination of parental rights followed by adoption by the paternal grandmother.

The Division placed the child with her grandmother in August 2018, where she has remained. The Division filed its guardianship complaint the same month, alleging the parents' substance abuse, incarceration, and failure to comply with services and to maintain a relationship with E.M. harmed the child.

Beginning October 2018, and continuing until February 2019, the trial court held a series of compliance reviews. During this time, the Division continued to work with the parents to remediate the reasons for E.M.'s removal, however, both remained non-compliant, failed to maintain contact with the Division, and were periodically incarcerated.

The parties agreed to mediation one week before the guardianship trial. At the time, M.F. had been incarcerated for more than a year for violation of probation. Following several hours of mediation, R.M. and M.F. executed identified surrenders to allow the paternal grandmother to adopt E.M.

R.M.'s surrender hearing occurred first. Afterwards, M.F.'s counsel began her voir dire. She testified to the following: (1) she had the opportunity to discuss the matter at length with counsel; (2) her decision to execute an identified surrender was a mediated result; (3) she reviewed, initialed, and signed the forms acknowledging she waived her right to a trial, at which the Division would have the burden of proof; (4) the surrender was made of her own free will and no one pressured, coerced, or threatened her, or promised her anything in exchange for the surrender; (5) she was not under the influence of any drugs, alcohol, or prescription medication that would affect her judgment; (6) she did not suffer from any mental or physical disabilities that would affect her decision; (7) she had enough time to consider her decision; (8) she believed the surrender was in E.M.'s best interest; (9) her counsel had answered all of her questions; and (10) she was satisfied with counsel's services and had no questions.

The trial judge also questioned M.F., who confirmed her answers would be the same if the judge asked her the same questions as her counsel on voir dire. She confirmed she was awaiting sentencing on a violation of probation. She testified she understood there was no guarantee of contact between her and E.M. once she executed the identified surrender and the adoption occurred. The

4

judge asked M.F. if she had "any questions at all about the procedure, anything that you don't understand?" M.F. responded "No."

The judge accepted the parties' surrenders. She found

> both [parents] to be articulate. They've been represented by very able counsel. They understand the matter was scheduled for a trial [in a week.] They understand that the Division had the burden of proof by clear and convincing evidence, [and] that they had no burden of proof.
>
> They participated in mediation with the paternal grandmother . . . and as a result of that they have executed the identified surrenders. I'm satisfied that they understand the ramifications. . . .
>
> I'm satisfied that they have voluntarily executed identified surrenders of their parental right[s] so that the paternal grandmother . . . can adopt [E.M. and] . . . that they waived their right to a trial in this matter.

In May 2019, just before E.M.'s paternal grandmother adopted the child, M.F. filed a motion pursuant to Rule 4:50-1 to vacate her identified surrender. She argued she was denied due process and her surrender was not voluntary because she was "prescribed new medication that impacted her ability to fully understand the proceedings since it did not have a chance to stabilize her." She claimed her trial counsel pressured her to make the identified surrender by telling her "[t]he State would drag her through the mud and take her daughter and every other child she would ever have."

At the oral argument of the motion, M.F.'s appointed counsel repeated these arguments and added that M.F. completed additional treatment programs during her incarceration. Counsel argued the motion was based on a change in circumstances.

M.F.'s counsel also argued vacating the identified surrender served E.M.'s best interests because she was in a relative placement and the transition back to M.F.'s care would be "smooth." Counsel argued the matter was suited for kinship legal guardianship (KLG).

The trial judge, who was the same judge who took the surrender, denied the motion. In her oral decision, the judge found no basis for relief pursuant to Rule 4:50-1. The judge recounted that E.M. was in placement from the outset of the case due to both parent's incarceration and M.F.'s failure to comply with substance abuse services. The judge noted the Division had provided each parent with "a myriad of services . . . with the hope of reunification." The judge stated KLG was explored with the paternal grandmother, but she wished to adopt E.M.

The judge found no evidence M.F. involuntarily surrendered her rights or was coerced to do so. The judge noted the mediation occurred after "all discovery had been exchanged. The Division had provided all of its documents

to all counsel."  The judge found "[i]t was a lengthy, lengthy mediation. . . . There were moving pieces.  Counsel were all in with the parties.  Counsel left . . . .  The parties were in separately with the mediator."

Regarding the surrender itself, the judge noted R.M.

> went first, so [M.F.] got to sit here and listen to [him] give a lengthy recitation of every single question on the three-page identified surrender questionnaire. . . .
>
> She then gave a lengthy response, very articulately to every single question.
>
> . . . .
>
> The court then asked numerous questions. . . . There's no indication on the record that [M.F.] spoke up.

As to M.F.'s claims that a new medication affected her decision making, the trial judge stated:

> [T]here was no indication whatsoever on the record in facial expressions, in voice, in statements or otherwise that [M.F.] did not execute a voluntary surrender of her parental rights.  There was no indication on the record that she was suffering from any problems with medication or otherwise.  And even to this day the ambiguous statement that well I was on some kind of medication, no reference to anything, no statement of her medication, no medical report, no expert testimony, no anything, just a medication.

The judge also rejected M.F.'s claim of coercion by her attorney. Citing M.F.'s answers to the identified surrender forms, the judge noted M.F. stated her attorney answered all of her questions, she was satisfied with his services, and had no questions regarding the surrender. The judge stated:

> There was no indication whatsoever that [M.F.] had any trepidation about what [she] was doing, that [she] was pressured in any way by [her] attorney with respect to this decision. . . .
>
> There was no indication that [M.F.'s] attorney forced [her,] coerced [her,] or put any pressure on [her] other than . . . [M.F.] having a conversation with him and him explaining to [her] what the evidence was that he had been presented by the Division. . . .
>
> If, in fact, [M.F.'s] attorney explained to [her] the legal nuance between having a [j]udgment of [g]uardianship entered against [her] as opposed to a surrender and what effect that would have if [M.F.] had other children, that's a legal ramification. That's not pressure.

The judge concluded:

> The fact that [M.F.] . . . changed [her] mind afterwards is not a legal basis to vacate an identified surrender under the law. And the fact that [she is] participating in additional programs . . . is not a changed circumstance under [Rule] 4:50 or . . . in any way, shape or form as a basis to set aside the finality of an identified surrender.

A-4666-18T1

The trial judge also found M.F. did not prove it was in E.M.'s best interests to vacate the identified surrender stating:

> [E.M.] had been in the Division's care, custody[,] and supervision in placement since her birth. She has never lived with [M.F.] [M.F.] has been noncompliant with services from the outset. [She was] given a multitude of chances. . . . [E.M.] is entitled to permanency and finality and to go on with her life.

I.

Appellate review of a trial court's denial of a motion to vacate a judgment pursuant to Rule 4:50-1 is limited. In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002) (citation omitted). "It is within the trial court's sound discretion, guided by equitable principles, to decide whether relief should be granted pursuant to Rule 4:50-1. . . . That decision 'will be left undisturbed unless it represents a clear abuse of discretion.'" Id. at 473 (internal citations omitted) (citing Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). Such motions should be "granted sparingly." F.B. v. A.L.G., 176 N.J. 201, 207 (2003) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:50-1 (2003)).

On appeal, M.F. argues she demonstrated exceptional circumstances under Rule 4:50-1(f) to warrant relief from the judgment. She asserts due process and fundamental fairness require we reverse the trial judge's order

9

because the judge should have held a plenary hearing and the lack of one deprived her of the ability to adduce testimony from her trial counsel regarding coercion and duress.

## A.

A parent seeking to vacate a guardianship judgment may utilize Rule 4:50-1 as a vehicle to do so. See J.N.H., 172 N.J. at474. A parent must satisfy a two-prong test in order to vacate a voluntary surrender of her parental rights. Ibid. First, the parent must satisfy the requirements of Rule 4:50-1. Ibid. Second, he or she must demonstrate vacating the identified surrender is in the child's best interest. Id. at 474-75.

In pertinent part, Rule 4:50-1 states: "On motion, . . . the court may relieve a party . . . from a final judgment or order for . . . (f) any other reason justifying relief from the operation of the judgment or order." "[B]ecause of the importance in the finality of judgments, relief under subsection (f) is available only when 'truly exceptional circumstances are present.'" J.N.H., 172 N.J. at 473 (quoting Hous. Auth., 135 N.J. at 286). Exceptional circumstances are "determined on a case by case basis according to the specific facts presented" and must always be "balanced against the state's legitimate interest in the finality of judgments." Id. at 474 (citations omitted). Moreover, the moving party

"bears the burden of proving that events have occurred subsequent to the entry of a judgment that, absent the relief requested, will result in 'extreme' and 'unexpected hardship.'" Id. at 473 (citation omitted).

Under prong two of J.N.H.,

> where the future of a child is at stake, there is an additional weight in the balance: the notion of stability and permanency for the child are paramount. . . . Thus, in determining a Rule 4:50 motion in a parental termination case, the primary issue is not whether the movant was vigilant in an attempt to vindicate . . . her rights or even whether the claim is meritorious, but what effect the grant of the motion would have on the child.
>
> [Id. at 474-75 (internal citation omitted).]

In this case, we agree with the trial judge there were no exceptional circumstances, let alone new circumstances present to warrant vacating the judgment. M.F.'s after-the-fact attempts at compliance with services did not constitute exceptional circumstances because her struggle with substance abuse and her attendant incarceration existed since the beginning of the Division's involvement in the case through the identified surrender.

M.F.'s claim that new medication affected the voluntary nature of her surrender also does not demonstrate exceptional circumstances because the record lacks any objective indicia of the supposed deleterious effects the

11

medicine had on her during the identified surrender negotiations and proceedings. As the judge noted, M.F. offered no evidence, aside from a self-authored, certified letter claiming she was under the influence. Considering the substantial evidence in the record relating to M.F.'s testimony and the trial judge's observation of the identified surrender showing M.F. participated in a lengthy voir dire and cogently answered questions, M.F.'s unsupported letter was insufficient to disturb the finality of the guardianship judgment. For these same reasons, we also concur with the trial judge's assessment that the record does not support M.F.'s claim of attorney coercion.

We also agree M.F. did not show it was in E.M.'s best interests to vacate the judgment. M.F.'s belated attempts to comply with services did not negate the harm the child suffered at birth from drug withdrawal symptoms. Moreover, M.F. did not establish that it was in E.M.'s best interests to be removed from the paternal grandmother, who was willing to adopt and with whom she resided for several years.

M.F. met neither prong of J.N.H. The trial judge's denial of the motion was not an abuse of discretion.

B.

Determining whether a parent was afforded due process in a termination proceeding requires the court to evaluate the procedures used under the balancing test enunciated in Mathews v. Eldridge, 424 U.S. 319, 333-35 (1976). N.J. Div. of Child Prot. & Permanency v. K.S., 445 N.J. Super. 384, 390-91 (2016); see also Div. of Youth & Family Servs. v. M.Y.J.P., 360 N.J. Super. 426, 465 (App. Div. 2003) (adopting the Mathews test). The court must balance three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk that there will be an erroneous deprivation of the interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the governmental interests involved, including the added fiscal and administrative burdens that additional or substitute procedures would require[]." K.S., 445 N.J. Super. at 391 (quoting Mathews, 424 U.S. at 334-35).

In addition to the parents' interest, the court must consider the child's interest in permanency and stability. See In re Guardianship of J.C., 129 N.J. 1, 26 (1992). "Whenever practicable, however, the parents' and the children's rights should both be accommodated." K.S., 445 N.J. Super. at 391.

A-4666-18T1

M.F. argues the denial of her motion to vacate the judgment and conduct a guardianship trial violated her due process rights. We discern no such violation.

The record readily demonstrates the litigation, mediation, and ultimately the identified surrender processes were lengthy and afforded M.F., who had the advice of counsel throughout, every opportunity to decide whether to voluntarily surrender her rights. In addition to the lack of procedural impropriety, there is no basis to disturb E.M.'s right to permanency and stability, compel the Division to undertake a guardianship trial, and forestall E.M.'s adoption.

The denial of M.F.'s motion did not constitute a deprivation of due process or denial of the principles of fundamental fairness. No plenary hearing was required to resolve the issues presented in her motion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4666-18T1